Orlando SALINAS, Appellant

v.

The STATE of Texas

NO. PD–0170–16

Court of Criminal Appeals of Texas.

Delivered: March 8, 2017

Jani Maselli Wood, Harris County Public Defender, Houston, TX, for Appellant.

Bridget Holloway, Assistant District Attorney, Houston, TX, Stacey Soule, Austin, TX, for The State.

Keller, P.J., delivered the opinion of the Court in which Keasler, Hervey, Alcala, and Walker, JJ., joined. Hervey, J. filed a concurring opinion. Yeary, J., filed a dissenting opinion in which Richardson and Newell, JJ., joined. Newell, J., filed a dissenting opinion in which Richardson, J., joined. Keel, J., did not participate.

When a defendant is convicted in a criminal case, various statutes require the payment of fees as court costs. One of these statutes assesses a consolidated fee: the defendant pays a single fee, but the money from that fee is divided up among a variety of different state government accounts according to percentages dictated by the statute. Appellant challenges the assessment of the consolidated fee with respect to two of the listed accounts: an account for "abused children's counseling" and an account for "comprehensive rehabilitation." Appellant claims that the unconstitutionality of these two statutory provisions renders the entire consolidated fee statute unconstitutional. We conclude that, with respect to the collection and allocation of funds for these two accounts, the statute is facially unconstitutional in violation of separation of powers. We also hold, however, that the invalidity of these two statutory provisions does not render the statute as a whole unconstitutional. As a result, we hold that any fee assessed pursuant to the consolidated fee statute must be reduced pro rata to eliminate the percentage of the fee associated with these two accounts. We reverse the judgment of the court of appeals and render judgment modifying the court costs in appellant's case.

## I. BACKGROUND

Appellant was convicted of injury to an elderly individual, a felony,[1] and sentenced to five years in prison. In a certified bill of costs, $133 was assessed pursuant to the consolidated fee statute, Texas Local Government Code § 133.102.[2]

On appeal, appellant raised a facial constitutional challenge to the assessment of the consolidated fee on the basis that twelve of the fourteen accounts listed in the statute were not sufficiently related to

**1.** TEX. PENAL CODE § 22.04(e)–(g). Any references to a code in this opinion are to the current version unless otherwise specified.

**2.** *See infra* at part II.B.

the court system to be valid recipients of money collected as court costs.[3] The court of appeals rejected appellant's claim,[4] but on his petition to this Court, we reversed and remanded the case for further consideration.[5] On remand, appellant challenged the consolidated fee on the basis of three of the accounts listed in the statute.[6] Now, on discretionary review, appellant challenges only two accounts.

The court of appeals held that interconnected statutes direct the comptroller to allocate proceeds collected for the comprehensive rehabilitation account to uses that relate to the administration of our criminal justice system and are thus legitimate criminal justice purposes.[7] With respect to the abused children's counseling account, the court of appeals held that, although no current statute mandates how the proceeds of that account are to be spent, "abused children's counseling" on its face relates to the administration of our criminal justice system by providing resources for victimized children.[8] Concluding that appellant failed to establish that the consolidated fee statute was facially unconstitutional, the court of appeals affirmed the trial court's judgment.[9]

## II. ANALYSIS

### A. Facial Challenges, Separation of Powers, and Court Costs

■ Appellant claims that Local Government Code § 133.102 is facially unconstitutional in its entirety because some of the funds from the consolidated fee are statutorily apportioned to accounts that do not serve legitimate criminal justice purposes. A facial challenge is an attack on the statute itself as opposed to a particular application.[10] Except when First Amendment freedoms are involved, a facial challenge to a statute is a challenge to the statute in all of its applications.[11]

■ Appellant's facial constitutional challenge is grounded on separation of powers. In the Texas Constitution, separation of powers between the branches of government is expressly guaranteed:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another; and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.[12]

One way the Separation of Powers provision is violated is "when one branch of government assumes or is delegated a power 'more properly attached' to another

3. *See Salinas v. State*, 426 S.W.3d 318, 325 (Tex. App.–Houston [14th Dist.] 2014), *rev'd*, 464 S.W.3d 363 (Tex. Crim. App. 2015).

4. *Id.* at 327–28.

5. *Salinas*, 464 S.W.3d at 368.

6. *Salinas v. State*, 485 S.W.3d 222, 226 (Tex. App.–Houston [14th Dist.] 2015).

7. *Id.* at 226.

8. *Id.*

9. *Id.* at 226–27.

10. *Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015) (quoting *City of Los Angeles v. Patel*, —— U.S. ——, 135 S.Ct. 2443, 2449, 192 L.Ed.2d 435 (2015)).

11. *State v. Johnson*, 475 S.W.3d 860, 864 (Tex. Crim. App. 2015).

12. Tex. Const. art. II, § 1.

branch."[13] The courts are delegated a power more properly attached to the executive branch if a statute turns the courts into "tax gatherers," but the collection of fees in criminal cases is a part of the judicial function "if the statute under which court costs are assessed (or an interconnected statute) provides for an allocation of such court costs to be expended for legitimate criminal justice purposes."[14] What constitutes a legitimate criminal justice purpose is a question to be answered on a statute-by-statute/case-by-case basis.[15] And the answer to that question is determined by what the governing statute says about the intended use of the funds, not whether funds are actually used for a criminal justice purpose.[16]

## B. The Consolidated Fee Statute

We set forth the portions of the consolidated fee statute that are relevant to our analysis of appellant's facial constitutional challenge:

(a) A person convicted of an offense shall pay as a court cost, in addition to all other costs:

(1) $133 on conviction of a felony;

(1) abused children's counseling

(6) comprehensive rehabilitation

[**Editor's Note:** The preceding image contains the reference for footnote [17]].

The question here is whether the two accounts at issue ("abused children's counseling" and "comprehensive rehabilitation") meet the requirement that the relevant statutes provide for an allocation of funds

(2) $83 on conviction of a Class A or Class B misdemeanor; or

(3) $40 on conviction of a nonjailable misdemeanor offense, including a criminal violation of a municipal ordinance, other than a conviction of an offense relating to a pedestrian or the parking of a motor vehicle.

* * *

(b) The court costs under Subsection (a) shall be collected and remitted to the comptroller in the manner provided by Subchapter B.

* * *

(e) The comptroller shall allocate the court costs received under this section to the following accounts and funds so that each receives to the extent practicable, utilizing historical data as applicable, the same amount of money the account or fund would have received if the court costs for the accounts and funds had been collected and reported separately, except that the account or fund may not receive less than the following percentages:

0.0088 percent;

* * *

9.8218 percent;[17]

"to be expended for legitimate criminal justice purposes."

## C. "Comprehensive Rehabilitation" Account

The "Comprehensive Rehabilitation" account is a general revenue fund dedicated

13. *Ex parte Lo*, 424 S.W.3d 10, 28 (Tex. Crim. App. 2014) (op. on State's motion for reh'g).

14. *Peraza v. State*, 467 S.W.3d at 517.

15. *Id.* at 517–18.

16. *Salinas*, 464 S.W.3d at 368.

17. Tex. Local Gov't Code § 133.102.

to "provide rehabilitation services directly or through public or private resources to individuals determined ... to be eligible for the services under a vocational rehabilitation program or other program established to provide rehabilitation services." [18] These rehabilitation services are administered within the authority of the Health and Human Services Commission (HHSC).[19] The statute does not, on its face, appear to serve a legitimate criminal justice purpose. Nothing in the statute that describes the functions of HHSC restricts its mission to, or even mentions, anything relating to criminal justice.[20] HHSC does not, for example, provide rehabilitation services only to victims of crime.[21] Nor is there any criminal justice restriction imposed on the use of the funds contained in the comprehensive rehabilitation account[22] or on the use of funds transferred to that account from the consolidated fee collected as court costs.[23] No criminal justice purpose is even mentioned.

■ The State contends that, under § 117.081 of the Human Resources Code, comprehensive rehabilitation services assist persons with "traumatic brain or spinal cord injuries" and that such injuries could easily be caused by a crime.[24] The State also argues that, under § 772.0063 of the Government Code, the governor is charged with establishing a comprehensive rehabilitation treatment program for child victims of sex trafficking.[25] It is true that victims of crime may avail themselves of the services of HHSC if they otherwise

18. Tex. Hum. Res. Code §§ 111.052(a), 111.060(a). *See also id.* § 111.001 ("It is the policy of the State of Texas to provide rehabilitation and related services to eligible individuals with disabilities so that they may prepare for and engage in a gainful occupation or achieve maximum personal independence.").

19. At the time of appellant's trial, the rehabilitation services were administered by the Department of Assistive and Rehabilitative Services (DARS), a department within HHSC. *See* Tex. Gov't Code § 531.001(4)(C) (Vernon's 2012) ("Health and human services agencies" include the ... Department of Assistive and Rehabilitative Services"); Tex. Hum. Res. Code § 117.071 (Vernon's 2013) (DARS responsible for providing and coordinating programs providing rehabilitation services); Acts 2003, ch. 198, § 1.21(a)(1) (providing for the transfer to DARS of "all powers, duties, functions, programs, and activities of the Texas Rehabilitation Commission"); Tex. Hum. Res. Code §§ 111.052(a), 111.060(a) (Vernon's 2013) (referring to the "commission"); *id.* § 111.002(1) (defining "commission" to be the "Texas Rehabilitation Commission"). Legislation passed in 2015 transferred the responsibility for these services directly to HHSC. *See* Tex. Hum. Res. Code § 111.052 (referring to the "priorities established by the executive commissioner"); *id.* § 111.002(2–b) (defining "executive commissioner" as "the executive commissioner of the Health and Human Services Commission"). *See also* http://www.dars.state.tx.us/ ("As of September 1, 2016, programs and services previously administered or delivered by the former Texas Department of Assistive and Rehabilitative Services (DARS) have been transferred by the Texas Legislature to the Texas Workforce Commission or the Texas Health and Human Services Commission"; listing comprehensive rehabilitation with HHSC). This change in the administrator of the account has no effect on the legal issues before us, so we need not determine whether this case is governed by current law or by the law in effect at the time of appellant's trial.

20. *See id.* §§ 111.002(3), (5), 111.052.

21. We provide this example only by way of illustration. Another example would be providing rehabilitative services to convicted persons. And of course, HHSC provides many other types of services than the rehabilitation services discussed here.

22. *See id.* § 111.060.

23. *See* Tex. Local Gov't Code § 133.102.

24. *See* Tex. Hum. Res. Code § 117.081.

25. *See* Tex. Gov't Code § 772.0063(a).

qualify, but that does not make a general appropriation of money to HHSC an allocation to be expended for a legitimate criminal justice purpose.[26] And while the court of appeals was correct in saying that interconnected statutes direct the use of the money appropriated to HHSC, the uses to which the money is directed do not relate to the criminal justice system. Consequently, we conclude that the allocation of funds to the "comprehensive rehabilitation" account does not qualify as an allocation of funds "to be expended for legitimate criminal justice purposes."[27] To the extent that § 133.102 allocates funds to the "comprehensive rehabilitation" account, it is facially unconstitutional in violation of the Separation of Powers provision of the Texas Constitution.

26. . In echoing the State's argument, the dissents misunderstand the holding of *Peraza*. The issue is whether the fee in question is a court cost (which is allowed) or a tax (which is unconstitutional). That issue must be determined at the time the fee is *collected*, not at the time the money is spent. Accordingly, *Peraza* requires that the relevant statutes direct that the funds be used for something that is a legitimate criminal justice purpose; it is not enough that some of the funds may ultimately benefit someone who has some connection with the criminal justice system. Under the dissents' (and the State's) reasoning, a fee to be paid for children's health insurance, without any other restriction, would be "for a criminal justice purpose" because someone who is a victim of a crime might receive medical services paid for by that insurance. Or a fee for the purpose of funding college student loans that would be available to anyone would be "for a criminal justice purpose" because someone who was a victim of a crime (or a convict, for that matter) could apply for such a loan. Under such a view, there would be no limits to the types of fees the legislature could require the courts to collect, and courts would effectively be tax gatherers.

Because the constitutional infirmity in this case is the statute's failure to *direct* the funds to be used in a manner that would make it a court cost (i.e., for something that is a crimi-

## D. "Abused Children's Counseling" Account

Before 1995, Article 37.072 of the Code of Criminal Procedure required the collection of a fee that would be remitted to an "abused children's counseling" account that channeled money to a program for counseling abused children under Education Code § 11.11.[28] In 1995, Education Code § 11.11 was repealed,[29] and Article 37.072 was revised to direct the proceeds from the fees to the "foundation school" fund.[30] At that point, no provision existed for channeling proceeds from fees to the "abused children's counseling" account, and no program existed to receive money from that account. In 1997, the legislature repealed Article 37.072 [31] and enacted Article 102.075, which required the collection of a fee as court costs and allocated the

nal justice purpose), the statute operates unconstitutionally every time the fee is collected, making the statute unconstitutional on its face. The fact that some of the money collected may ultimately be spent on something that would be a legitimate criminal justice purpose if the legislature had directed its use in that fashion is not sufficient to create a constitutional application of the statute because the actual spending of the money is not what makes a fee a court cost.

27. We note, but need not address the effect of, a provision that requires certain unexpended funds in the "comprehensive rehabilitation account" to revert to the general revenue fund. See TEX. HUM. RES. CODE § 111.060(b).

28. See TEX. CODE CRIM. PROC. art. 37.072, § 3 (West 1992); TEX. EDUC. CODE § 11.11 (LEXIS 1994). Article 42.151 gave instructions regarding when a defendant would pay the fee. See TEX. CODE CRIM. PROC. art. 42.151 (West 1992).

29. See TEX. EDUC. CODE § 11.11 (LEXIS 1996).

30. See TEX. CODE CRIM. PROC. 37.072, § 3 (West 1996).

31. See TEX. CODE CRIM. PROC. art. 37.072 (West 1998).

proceeds to various accounts.[32] One of these accounts was the "abused children's counseling" account,[33] but no program was created for which the account would be used. Article 102.075 was repealed effective January 1, 2004,[34] and the provision for allocating funds to the "abused children's counseling" account was moved to its current place in Local Government Code § 133.102.[35] The Comptroller's website says that the money collected for abused children's counseling is deposited in the General Revenue Fund.[36]

The result of these legislative actions is that, although the "abused children's counseling" account originally funded a program for abused children's counseling, the program to which the funds are directed no longer exists and the funds revert to the General Revenue Fund. We cannot uphold the constitutionality of funding this account through court costs on the basis of its name or its former use when all the funds in the account go to general revenue. Consequently, the allocation of funds to the "abused children's counseling" account does not currently qualify as an allocation of funds "to be expended for legitimate criminal justice purposes." To the extent that § 133.102 allocates funds to the "abused children's counseling" account, it is facially unconstitutional in violation of the Separation of Powers provision of the Texas Constitution.

## E. Severability

Appellant claims that there is no savings or severability clause in § 133.102 and that the invalidation of part of the statute requires that the entire statute be held unconstitutional. However, it is possible for only a portion of a statute to be facially unconstitutional, and if that is the case, the court should invalidate only that portion, leaving the remainder of the statute intact, as long as doing so would be feasible.[37] Severance is feasible as long as the valid and invalid provisions are not so inextricably intertwined that a severance would render the statute incomplete or contrary to legislative intent.[38]

Subsection (e) of the statute instructs the Comptroller to allocate from the consolidated fee to the accounts "the same amount of money the account or fund would have received if the court costs for the accounts and funds had been col-

**32.** See id. art. 102.075(a), (h).

**33.** See id. art. 102.075(h).

**34.** See Tex. Code Crim. Proc. art 102.075 (West 2004).

**35.** See Tex. Local Gov't Code § 133.102 (LEXIS 2004). Article 42.151 remains unchanged to this day and continues to refer to Article 37.072, even though the current version of Article 37.072 does not set forth any fees that would be the subject of Article 42.151's instructions. See Tex. Code Crim. Proc. arts. 37.072, 42.151.

**36.** Texas Comptroller Manual of Accounts—Fiscal 2017, Revenue Object 3704—Court Costs—Abused Children's Counseling, webpage:

https://fmcpa.cpa.state.tx.us/fiscalmoa/rev.jsp?num=3704&id=13048.
One of the dissents suggests that we decide the constitutionality of the portion of the fee devoted to the abused children's counseling account on the basis of information we observed on a website. The dissent is incorrect. The fee is unconstitutional because the funds are not directed by statute to be used for a criminal justice purpose. See supra at n.26. The comptroller's website simply illustrates the consequences of the legislature's lack of direction. We also observe that the dissent has not suggested that the content on the comptroller's website is inaccurate.

**37.** Ex parte Perry, 483 S.W.3d 884, 903 (Tex. Crim. App. 2016).

**38.** Id.

lected and reported separately." [39] Given that language and our general rule of severing unconstitutional parts of a statute when feasible, we conclude that the proper remedy is to sever the invalid provisions. The valid and invalid provisions are not inextricably entwined, and severance would implement the legislative intent to the greatest extent possible. The fee should be reduced pro rata, according to the percentage allocated to the impermissible accounts.

The combined percentage attributable to the "abused children's counseling" and "comprehensive rehabilitation" accounts under the statute is 9.8306 percent. That percentage of the $133 fee in appellant's case is $13.07. Subtracting that amount from the $133 fee yields a fee of $119.93.

### F. Retroactivity

■ We have sometimes found it appropriate to address the retroactivity implications of a holding at the time of the holding.[40] Retroactivity principles are implicated if the holding of a court announces a "new" rule.[41] When the issue is one of statutory interpretation, a rule is new only when it is a "clear break" with the past. [42] But because a statute is presumed to be constitutional until it is determined otherwise, [43] we conclude that declaring a statute unconstitutional on its face is a "new"

rule sufficient to invoke a retroactivity analysis.

We have recognized four types of retroactivity approaches: (1) *pure prospectivity*—applying the new rule to those cases tried after the effective date of the opinion announcing the new rule; (2) *limited prospectivity*—applying the new rule in situation (1) and to the parties in the case in which the new rule is announced; (3) *limited retrospectivity*—applying the new rule in situations (1) and (2) and to all cases then pending on direct review or not yet final; and (4) *pure retrospectivity*—applying the new rule to cases in situations (1), (2), and (3) and to cases pending on collateral review. [44] This is not, however, an exhaustive list of approaches to retroactivity.

■ *Griffith v. Kentucky* articulated the retroactivity rule for federal constitutional errors in criminal cases, and it is one of limited retrospectivity: a newly announced federal constitutional rule for conducting criminal prosecutions must be retroactively applied to all cases pending on direct review or not yet final when the rule was announced.[45] The *Griffith* retroactivity rule is binding upon the states when federal constitutional errors are involved but does not bind the states on matters of state law.[46] Because our current holding is based on the Separation of Powers provi-

---

**39.** *See supra* at part II.B.

**40.** *Geesa v. State*, 820 S.W.2d 154, 163 (Tex. Crim. App. 1991), *overruled on other grounds by*, *Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000) ("[T]he question of whether a decision announcing a new rule should be given prospective or retroactive effect should be faced at the time of that decision.") (omitting quotation marks and brackets from *Geesa*). *But see Taylor v. State*, 10 S.W.3d 673, 676 (Tex. Crim. App. 2000) (addressing the retroactivity of the holding in a prior case).

**41.** *Taylor*, 10 S.W.3d at 681.

**42.** *Id.* at 682.

**43.** *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009).

**44.** *Geesa*, 820 S.W.2d at 163 n.13.

**45.** 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

**46.** *Taylor v. State*, 10 S.W.3d 673, 679 (Tex. Crim. App. 2000).

sion of the Texas Constitution, we are free to decide what retroactivity rule applies.

■ For a new construction of a state statute, we have adopted the balancing analysis in *Stovall v. Denno*,[47] which requires considering (1) the purpose to be served by the new standards, (2) the extent of reliance by law enforcement authorities on the old standards, and (3) the effect a retroactive application of the new standards would have on the administration of justice.[48] The outcome of this balancing test will generally turn on whether the new rule impacts the truth-finding function or is merely procedural.[49] New state non-constitutional rules that impact the truth-finding function are usually retroactive, at least to cases pending on direct appeal or not yet final, while rules that do not impact the truth-finding function are usually accorded limited prospectivity.[50] Exceptions to this general principle can occur if the reliance or "administration of justice" factors in the *Stovall* inquiry are unusually high for a truth-finding rule or insignificant for a procedural rule.[51]

■ We have not yet determined what retroactivity analysis should apply to new rules of state constitutional origin.[52] We conclude that, at least when the new state constitutional rule does not involve a personal right of the defendant, a *Stovall* analysis is appropriate. That is the case here because the separation of powers violation is the violation of a right of the

courts, not of any personal right of the defendant. We turn then, to the *Stovall* test.

■ What costs a defendant pays has nothing to do with the truth-finding function of a criminal trial. It is a financial burden on the defendant, but there is nothing inherently inappropriate about making the defendant pay a fee as a result of being convicted or otherwise suffering an adverse outcome in criminal proceedings. Consequently, the purpose factor weighs against retroactivity. We also conclude that the State's reliance interests are heavy, especially for money collected for comprehensive rehabilitation, a specific state program. Although less heavy, the State's reliance interest in having a revenue stream from the abused children's counseling account is significant. The reliance factor, therefore, weighs against retroactivity. We also find that imposing our separation of powers holding retroactively could create large administrative burdens on court clerks throughout the state, so the administration-of-justice factor weighs against retroactivity.

We do, however, recognize the need to reward parties who persuade a court to overturn an unconstitutional statute,[53] and we conclude that applying the new constitutional rule to the parties in the present case is necessary, but not quite sufficient to satisfy that need. Other defendants have challenged one or both of the fees at issue

---

47. 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 1967.

48. *Taylor*, 10 S.W.3d at 678, 681.

49. *Id.* at 682–83.

50. *Id.*

51. *Id.* at 683.

52. *See id.* at 681 (holding that a *Stovall* analysis applies to new rules of non-constitutional origin).

53. *See id.* at 682 ("[R]etroactive application of the rule to the parties in the announcing case is a necessary price to pay for a system that encourages parties to challenge bad rules: there is a need to reward the party ... responsible for convincing the Court to" overturn a bad rule.) (internal quotation marks omitted).

in petitions for discretionary review before this Court and can be said to have exerted some influence in procuring our current holding. Therefore, we will also apply our constitutional holding in this case to any defendant who has raised the appropriate claim in a petition for discretionary review before the date of this opinion, if that petition is still pending on the date of this opinion and if the claim would otherwise be properly before us on discretionary review. Otherwise, our holding will apply prospectively to trials that end after the date the mandate in the present case issues.[54]

### G. Disposition

We conclude that § 133.102 is facially unconstitutional to the extent it collects and allocates funds to the comprehensive rehabilitation and abused children's counseling accounts. We reverse the judgment of the court of appeals with respect to the issue of court costs, and we modify the trial court's judgment to change the $133 consolidated fee to $119.93.

## CONCURRING OPINION

Hervey, J., filed a concurring opinion.

I agree with the majority's disposition of this case and join its opinion, but I write separately to address two issues.

First, although the majority correctly addresses only the $133 consolidated court-cost fee because that is the only one at issue in this case, there are other consolidated court costs that are also affected by this Court's opinion. In fact, a consolidated court cost is assessed against anyone convicted of any criminal offense except pedestrian or parking-of-a-motor-vehicle offenses. TEX. LOC. GOV'T CODE § 133.102(a). The following table should elucidate the changes:

| Consolidated Fees on Conviction | | |
| --- | --- | --- |
| | Before *Salinas* | Post-*Salinas* |
| Felony | $133.00 | $119.93 |
| Class A & B misdemeanors | $83.00 | $74.84 |
| Nonjailable offenses, including a criminal violation of a municipal ordinance, other than a pedestrian or parking-of-a-motor-vehicle offense | $40.00 | $36.07 |

*Id.*

Second, there are 254 counties in the State of Texas, and many of those counties have more than one clerk:[1] district court

54. If the Legislature redirects the funds to a legitimate criminal justice purpose, the entire consolidated court cost may be collected. If that occurs before mandate issues, the only cases that will be affected by this opinion will be the few that are now pending in this Court and are appropriate for relief.

1. In rural counties with a population less than 8,000, the office of district clerk is combined with the county clerk unless the voters authorize separate offices. TEX. GOV'T CODE § 51.501.

clerks, county court clerks, justice court clerks, and municipal court clerks. Those clerks, in turn, often have their own staff carrying out their daily duties. Our holding today affects all of them. And, although defense attorneys, county attorneys, and district attorneys are familiar with this Court's opinions, I am not so sure that the hard-working clerks of this State have the time to read every opinion handed down by this Court. So to ensure clerks begin assessing the correct costs as soon as possible and that people pay only what they are required to, I would order the clerk of this Court to send copies of this decision to the County & District Clerk Association of Texas, the Justices of the Peace and Constables Association, and the Texas Municipal Courts Association to be disseminated amongst their membership. We may not be able to notify every clerk in the State about this decision, but we should take any reasonable measures we can to do so.

Yeary, J., filed a dissenting opinion in which Richardson and Newell, JJ., joined.

In this case the Majority decides that one of two subsections of a Texas statute is facially unconstitutional, not because the language of the subsection itself irreconcilably conflicts with the language of the Texas Constitution, but because of information the Majority observed on a website. It then declares a second subsection of the statute to be facially unconstitutional because, after monies are collected pursuant to the language of the statute, another, different statute directs those monies to be allocated to an agency that might possibly be capable of using some of those allocated funds for a non-criminal justice purpose (although Appellant has offered this Court no concrete examples of that occurring). In neither instance does the Majority demonstrate that the language of the statutory subsections are in actual conflict with the Constitution. In fact, at one point, the Majority suggests to the Legislature that it might save the subsections at issue if the Legislature were only to enact yet another separate statute that "redirects the funds to a legitimate criminal justice purpose." Majority Opinion at 113 n.54.

The Majority errs by failing to acknowledge and apply the proper standard of review attached to claims that statutes are facially unconstitutional. The Majority observes that a "facial challenge to a statute is a challenge to the statute in all of its applications." Majority Opinion at 106. I take no issue with that claim, but more must be said. The truth is that a statute must not be found to be facially unconstitutional unless the proponent of the claim can satisfy the reviewing court that there is no possible application of the statute that is constitutional. *State v. Johnson*, 475 S.W.3d 860, 864 (Tex. Crim. App. 2015) (citing *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 & n.6, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008) for the proposition that "a facial challenge to the constitutionality of a statute can succeed only when it is shown that the statute is unconstitutional in all of its applications."). The Majority's failure to acknowledge and apply that standard here has led it to err.

The Consolidated Fees on Conviction statute found in the Local Government Code requires the collection of fees in criminal cases and the allocation of those fees to various accounts and funds. Tex. Loc. Gov't Code § 133.102. On discretionary review, Appellant challenges the facial constitutionality of that statute based upon two subsections of the statute that allocate small percentages of the fees collected to two distinct accounts: (1) Subsection (e)(1), allocating 0.0088 percent to abused children's counseling; and (2) Subsection (e)(6), allocating 9.8218 percent to compre-

hensive rehabilitation. TEX. LOC. GOV'T CODE § 133.102(e)(1) & (6). Appellant claims these subsections violate the separation of powers clause in the Texas Constitution. TEX. CONST. art. II, § 1.

In *Peraza v. State*, this Court very recently held that, "if the statute under which court costs are assessed (or an interconnected statute) provides for an allocation of such court costs to be expended for legitimate criminal justice purposes, then the statute allows for a constitutional application that will not render the courts tax gatherers in violation of the separation of powers." *Peraza v. State*, 467 S.W.3d 508, 517 (Tex. Crim. App. 2015). In that case, we looked beyond the statute at issue—the DNA record fee, which seemed on its face to be at least potentially unconstitutional in that it directed one portion of money collected pursuant to its terms to be deposited to the criminal justice planning account and another portion to the state highway fund—in order to save it; we did not look beyond the statute at issue there in order to find a reason to declare it unconstitutional. We also said there, that in order "[t]o determine whether a statute always operates unconstitutionally in all possible circumstances, we must look to see if there are potential applications of the statute that are constitutionally valid." *Id.* at 516. We did not ask whether there might be any conceivable applications of the statute that might be unconstitutional. The Majority in this case looks beyond the challenged statute at issue, and determines that some of the uses to which the fees might be put, after they are collected and allocated, might not serve what it deems to be legitimate criminal justice purposes; so it declares the statutory subsections facially unconstitutional.

With regard to Subsection (e)(1), the Majority examines the history of the "abused children's counseling" account, noting that it was "moved to its current place in Local Government Code § 133.102" after the repeal of a predecessor statute in January of 2004. Majority Opinion at 110. The Majority then observes that "[t]he Comptroller's website says that the money collected for abused children's counseling is deposited in the General Revenue Fund."[1] Majority Opinion at 110. It then declares, "The result of these legislative actions is that ... the program to which the funds are directed no longer exists ...." *Id.* at 110. The Majority finally decides, "We cannot uphold the constitutionality of funding this account through court costs ...." *Id.*

First, it is not up to us to "uphold" or not to "uphold" the constitutionality of this statute. It is Appellant's burden to persuade us that there is no possible application of the statute that is constitutional. Appellant has not persuaded me. Counseling abused children, it seems to me, is a legitimate criminal justice purpose. The Majority takes issue with the fact that the office of the Texas Comptroller claims on its website that it currently directs these funds to the "General Revenue Fund." But the Comptroller's website actually claims that they are deposited to *"unappropriated* General Revenue." *See* note 1, *supra.* The place where the Comptroller currently

1. In fact, a note on the website identified by the Majority opinion suggests that the fee is now actually deposited to *"unappropriated* General Revenue." *See* Texas Comptroller Manual of Accounts—Fiscal 2017, Revenue Object 3704—Court Costs—Abused Children's Counseling, https://fmcpa.cpa.state.tx.us/fiscalmoa/rev.jsp?num=3704&id=13048

(emphasis added). The Majority makes no attempt to explain the difference between General Revenue and Unappropriated General Revenue, or even attempt to ascertain whether there is a difference that might impact the resolution of this case. But more importantly, neither has the Appellant.

deposits the funds does not affect the facial constitutionality of the statute at issue here. I agree with the justices of the First and Fourteenth Courts of Appeals who concluded that, "[a]lthough no current statute mandates how the .0088% of the proceeds allocated to abused children's counseling under [S]ection 133.102(e)(1) may be spent, abused children's counseling on its face relates to the administration of our criminal justice system by providing resources for victimized children." *Penright v. State*, 477 S.W.3d 494, 500 (Tex. App.–Houston [1st Dist.] 2015) (Justice Huddle writing for the majority, joined by Chief Justice Radack and Justice Massengale); *accord Salinas v. State*, 485 S.W.3d 222, 226 (Tex. App.–Houston [14th Dist.] 2016) (Justice Boyce writing for the majority, joined by Justices Jamison and Busby).

Regardless, the ultimate use of the funds collected and allocated pursuant to Section 133.102 cannot make the statute under which the funds were collected and allocated unconstitutional. The Comptroller could use the funds allocated under Section133.102(e)(1) to fund counseling for abused children. And even if it does not, the Comptroller could be depositing these funds in general revenue only because, for the time being, the Legislature has not provided for an alternative place to put the funds. In any event, the Appellant has failed to demonstrate that these funds will not be used to fund counseling for abused children or that the collection and allocation of these funds do not serve a legitimate criminal justice purpose. Consequently, Appellant has failed to overcome his burden to show that there is no possible constitutional application of the law.

With regard to Subsection (e)(6), the Majority observes that "the 'Comprehensive Rehabilitation' account is a general revenue fund dedicated to 'provide rehabilitation services [...] to individuals determined ... to be eligible for the services under a vocational rehabilitation program or other program established to provide rehabilitation services.'" Majority Opinion at 108 (quoting TEX. HUM. RES. CODE §§ 111.052(a), 111.060(a)). It then declares, in a rather perfunctory fashion, that "[t]he statute does not, on its face, appear to serve a legitimate criminal justice purpose" because the rehabilitative services are administered by the Health and Human Services Commission (HHSC), and the HHSC's mission is not restricted by statute to criminal justice. Majority Opinion at 108. But the Majority implicitly acknowledges that HHSC does provide services to victims of crime. *See* Majority Opinion at 108 ("HHSC does not ... provide rehabilitation services *only* to victims of crime."). Even if some of the services that HHSC provides do not directly serve criminal justice purposes, that does not mean that none of them do. Once again, Appellant has failed to overcome his burden to show that there is no possible constitutional application of Section 133.102(e)(6).

The Majority says that "courts are delegated a power more properly attached to the executive branch if a statute turns the courts into 'tax gatherers,' but the collection of fees in criminal cases is part of the judicial function 'if the statute under which court costs are assessed (or an interconnected statute) provides for an allocation of such court costs to be expended for a legitimate criminal justice purpose.'" Majority Opinion at 107 (quoting *Peraza*, 467 S.W.3d at 517). The fees collected and allocated by the statutory subsections assailed by the Appellant in this case are collected and allocated for legitimate criminal justice purposes. They are not taxes.[2]

**2.** The statute at issue in *Peraza* was Article 102.020 of the Code of Criminal Procedure.

Appellants have brought a challenge to the facial constitutionality of a statute compelling the collection and allocation of certain fees. Instead of examining the facial constitutionality of the statute, the Majority has examined the uses to which fees collected and allocated under the statute are put. We are not examining here the constitutionality of the uses to which the fees collected and allocated under the statute are put. We are examining the facial constitutionality of laws passed by the Legislature of our state and approved by our Governor. More respect and deference is owed to those enactments than the Majority has shown them here. I respectfully dissent.

TEX. CODE CRIM. PROC. art. 102.020. Subsection (a) of that provision required the payment of court costs of a certain amount for certain specified offenses. Subsection (e) was the critical provision, for it earmarked that fee for specific purposes, namely 1) the state highway fund, and 2) the criminal justice planning account in the general revenue fund. Particularly with respect to the proportion of the fee dedicated to the state highway fund, it was unclear from the face of Article 102.020 how those monies would go to a legitimate criminal justice purpose. But the burden was on the appellant to show they would *not,* and we held that we could look to an "interconnected statute" to determine whether at least some of the monies would necessarily be dedicated to such a purpose. Finding such an "interconnected statute," we held that Article 102.020 was not unconstitutional on its face. Thus, *Peraza* stands for the proposition that an "interconnected statute" may serve to *refute* any notion that a particular court cost is facially unconstitutional because it is really nothing more than a tax. It is not at all clear to me that an "interconnected statute" can definitively *establish* that the statute that assesses the particular cost is necessarily unconstitutional in *all* of its applications.

Here, we face a statute that is not manifestly unconstitutional on its face. Subsection (a) of Section 133.102 of the Local Government Code assesses a flat cost of variable amounts depending upon the degree of offense a per-

Newell, J. filed a dissenting opinion, in which Richardson, J., joined.

Of late, this Court has gotten fairly adept at striking down statutes as facially unconstitutional. Though there are some exceptions, these cases have generally applied a different standard of review than the one at work in this case. Those cases dealt with First Amendment, "overbreadth" challenges rather than the type of pure facial challenge we consider here that attacks a statute in its every application. *See e.g. Ex parte Perry,* 483 S.W.3d 884 (Tex. Crim. App. 2016); *State v. Johnson,* 475 S.W.3d 860 (Tex. Crim. App. 2015); *Ex parte Thompson,* 442 S.W.3d 325 (Tex. Crim. App. 2014); *Ex parte Lo,*

son is convicted of. TEX. LOC. GOV'T CODE § 133.102. Subsection (e) of that provision then allocates a certain percentage of those monies to discrete funds or accounts, most of which have obviously legitimate criminal justice purposes. Thus, the statute as a whole has at least some legitimate non-tax purposes, and is not facially unconstitutional to that extent. Are the two subsections at issue here themselves facially unconstitutional? *Peraza* establishes that it is the appellant's burden to show that they are. Moreover, under *Peraza,* it may be possible to point to certain "interconnected statutes" to *refute* the notion that they *lack* any legitimate criminal justice purpose. But, unless the interconnected statutes can affirmatively establish that *none* of the proportion of the monies allocated to that particular fund or account can *possibly* serve a legitimate criminal justice purpose, I fail to see how they can serve to *satisfy* an appellant's burden to establish facial unconstitutionality, as opposed to refuting it. And what is more, if there is an interconnected statute that ultimately funnels *all* of the monies to a purpose that is manifestly *not* related to a legitimate criminal justice purpose, that may only go to show that the interconnected statute *itself* is unconstitutional, not invariably that the statute that originally assessed the cost is. In any event, for the reasons explained in the text, I do not believe that Appellant has shown that the interconnected statutes at issue in this case foreclose the use of the assessed funds for all legitimate criminal justice purposes.

424 S.W.3d 10 (Tex. Crim. App. 2013). The legislature even passed a law requiring courts to provide notice to the Attorney General before holding a statute unconstitutional, which this Court promptly held unconstitutional. *See Ex parte Lo*, 424 S.W.3d 10, 27 (Tex. Crim. App. 2013) (opinion on reh'g.) (holding that section 402.010 of the Texas Government Code unconstitutional because it violates the separation-of-powers provision of the Texas Constitution). Nevertheless, the Court's analysis in this regard has always been appropriately rigorous given the drastic nature of holding a statute unconstitutional.

That is not the case here. As Judge Yeary's dissent explains, a true facial challenge to a statute requires this Court to look for ways to uphold the statute, not ways to strike the statute down. *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ("A facial challenge to a legislative Act, is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."). If the statute can result in the collection of funds for a legitimate criminal justice purpose, then it is not unconstitutional in every application. *Peraza v. State*, 467 S.W.3d 508, 516 (Tex. Crim. App. 2015) ("To determine whether a statute always operates unconstitutionally in all possible circumstances, we must look to see if there are potential applications of the statute that are constitutionally valid."). There is no question that funds limited at collection to pay for comprehensive rehabilitation and abused children's counseling *could* be used for legitimate criminal justice purposes. The Court concedes as much. Maj. op. at 108.

That is why I do not agree with the Court that the failure of a statute to further specifically direct that the funds deposited in general revenue be used for a criminal justice purpose—aside from the limitations provided by the description of the fee itself and other interrelated statutes—means the legislature drafted a facially unconstitutional court-cost statute. *Peraza*, 467 S.W.3d at 519 (rejecting argument that DNA Record Fee was facially unconstitutional simply because it was deposited into the criminal justice planning account which funded other projects unrelated to managing the statewide criminal DNA database). The statutory provisions at issue are not simply general revenue collection; they direct funds collected go to particular purposes, and there are circumstances under which those funds would serve a legitimate criminal justice purpose. Yet, the Court relies upon the possibility that the funds could be used for some other, illegitimate purpose to suggest that the statute is facially unconstitutional. On the one hand, the Court rejects the possible use of the funds for a legitimate criminal justice purpose as irrelevant to the analysis. But on the other, the Court links the facial constitutional flaw to the possibility that the funds could be used for an illegitimate purpose.

The Court compounds this problem by reading the limitations in the statutory provisions at issue in *Peraza* to be a necessary condition for constitutionality rather than merely a sufficient one. Unquestionably, the statutes at issue in *Peraza* provided more express limitations on the use of the court costs collected than are present in this case. *See Peraza*, 467 S.W.3d at 519. ("Because a portion of the DNA record fee collected is deposited into the criminal justice planning account, and the criminal justice planning account is statutorily required to reimburse monies spent collecting DNA specimens from offenders charged with certain offenses (including aggravated sexual assault of a child under

14), we hold that the statute allows for constitutionally permitted applications."). And we rejected Peraza's claims that the statutes providing for deposits in the criminal justice planning account and the state highway fund were facially unconstitutional because specific statutes limited the use of the funds for a criminal justice purpose. *Id.* at 520–21. We held that Peraza, and the First Court of Appeals, were simply wrong that some of the money collected could be used for a purpose other than managing the statewide criminal DNA database or defraying the cost of administering it.

Yet, we never held that those limitations were required; we simply held that the interconnected statutory provisions "allow" for such funds to be expended for legitimate criminal justice purposes. *Id.* at 521. When we focused upon the remoteness of potential unconstitutional "applications", we still focused on how the money could have been spent, not on how it had been collected. *Id.* at 521. ("The statutory scheme allocating these resources to the state highway fund are required, via interconnected statutory provisions, to be expended for legitimate criminal justice purposes."). And at all times we maintained that it was the defendant's burden to show that it was not possible for the statute to operate constitutionally under any circumstance. *Id.*

If we are truly looking at whether the interconnected statutes are facially unconstitutional without regard to how the money is spent, then we should only be looking at whether the terms of the statutes specifically prevent, at the time of collection, the use of the funds for any legitimate criminal justice purpose. *Peraza*, 467 S.W.3d at 516 ("[W]e cannot hold a statute requiring the assessment of court costs facially unconstitutional simply because there might be a potential and/or remote circumstance in which it may be applied unconstitutionally."). If such a statute were passed, it would, by its own terms rather than its possible effects, be unconstitutional in all of its applications. Admittedly, such a statute would seem unlikely to pass because it would be notoriously unconstitutional. But that accurately reflects how difficult it should be for the legislature to draft a statute that is unconstitutional in every application and how easy and obvious it should be to spot such constitutional infirmities.

The court's requirement of an express limitation of the statutes in question to only constitutional applications obviates the need for any presumption of constitutionality. *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013) ("[A]nalysis of a statute's constitutionality must begin with the presumption that the statute is valid and that the Legislature did not act arbitrarily or unreasonably in enacting it."). Moreover, it turns that well-established presumption on its head and removes any need for as-applied constitutional challenges.[1] This Court's holding could have far-reaching consequences for facial constitutional challenges to other statutes. That is why I whole-heartedly agree with Judge Yeary, and why I join his dissent.

But I write separately to clarify that arguing that the statutes at issue are constitutional is not the same thing as endorsing the legislature's drafting or the legisla-

---

1. Indeed, the Court fails to mention any duty to employ a reasonable narrowing construction of the statutes at issue to avoid a constitutional violation. *See e.g. State v. Johnson*, 475 S.W.3d 860, 872 (Tex. Crim. App. 2015) (noting the duty of Texas courts to employ, if possible, a reasonable narrowing construction to avoid a constitutional violation); *Ex parte Thompson*, 442 S.W.3d 325, 339 (Tex. Crim. App. 2014) (same).

tion's effect. As the Court thoroughly sets out, the statutes governing the collection of fees in criminal cases are written very broadly and with no express limitations on how fees deposited in the general revenue fund are ultimately spent, except that they must go to comprehensive rehabilitation and abused children's counseling. They could be used for legitimate criminal justice purposes, but they could also be used as a tax to fund any number of governmental initiatives unrelated to the proper functioning of the criminal justice system. Without the inclusions of more definite limitations, a "user-pay system" creates a devilishly tempting incentive for a "tax-free" governmental revenue stream. Unchecked, these types of fee statutes could threaten to grow the criminal justice system atop the court-cost equivalent of a sub-prime mortgage bubble.

That is why the recent public momentum for addressing the collection and administration of court costs in the legislature is not at all surprising. Many have noted that incarcerating the indigent for the failure to pay fines and court costs threatens to turn our jails into debtors prisons. *See e.g. Cain v. City of New Orleans,* 184 F.Supp.3d 349 (E.D. La. 2016); Joseph Shapiro, *As Court Fees Rise, The Poor are Paying the Price,* http://www.npr.org/2014/05/19/312158516/increasing-court-fees-punish-the-poor; Shaila Dewan and Andrew W. Lehren, *After a Crime, the Price of a Second Chance,* N.Y. TIMES, Dec. 12, 2016. The Chief Justice of the Texas Supreme Court, in his recent State of the Judiciary Address, remarked, "Jailing criminal defendants who cannot pay their fines and court costs—commonly called debtors' prison—keeps them from jobs, hurts their families, makes them de-

pendent on society and costs the taxpayers money." Jonathan Silver, *Legislature Should Prioritize Judicial Security, Texas Supreme Court Justice Says,* Texas Tribune, https://www.texastribune.org/2017/02/01/state-judiciary. The legislature has heard these concerns and is moving to respond. Legislation is currently pending that begins to address the serious problems attendant to funding the criminal justice system through fees paid by indigent criminal defendants. *See* Tex. H.B. 1465, 85th Leg., R.S. (2017).

But by stepping in to address a political issue as a constitutional one, we risk stealing that momentum away from the branch of government best able to treat the issue as a systemic one after input from all the relevant stakeholders. *See Washington State Grange v. Washington State Republican Party,* 552 U.S. 442, 451, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008) (noting that, "facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution."); *see also Ayotte v. Planned Parenthood of Northern New Eng.,* 546 U.S. 320, 329, 126 S.Ct. 961, 163 L.Ed.2d 812 (2006) (noting that courts must keep in mind that " '[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people.' "). As a Court, we can only look at the issue through an analytical keyhole–made all the more tiny by a harshly deferential standard of review–as each statute winds its way through the court system. *Peraza,* 467 S.W.3d at 518 ("Whether a criminal justice purpose is "legitimate" is a question to be answered on a statute-by-statute/case-by-case basis.").[2] It is ironic that

---

**2.** The Court attempts to ameliorate this concern by adding the issue of retroactivity to our holding in this case and deciding it in favor of

the State. I would not address an issue the court of appeals has not had the opportunity to consider. *See e.g. Armstrong v. State,* 805

we have intruded upon the province of another branch of government in the name of preserving the separation of powers.

The late Supreme Court Justice Antonin Scalia famously quipped that "a lot of stuff that's stupid is not unconstitutional." Jennifer Senior, *In Conversation: Antonin Scalia*, NEW YORK MAGAZINE, Oct. 6, 2013. He was, of course, expressing the view that not everything that is undesirable, annoying, or even harmful rises to the level of a constitutional crisis. *Brown v. Chicago Board of Education*, 824 F.3d 713, 714 (7th Cir. 2016). He even went so far as to suggest that judges should be given a stamp that says, "stupid but constitutional." *Id.* These statutory provisions illustrate the need for such a stamp. If only the Court would use it.

With these thoughts, I dissent.

Newell, J. filed a concurring opinion.

I have already noted my disagreement with this Court's opinion on original sub-

mission.[1] Both parties—each relying in part upon arguments in Judge Yeary's dissent as well as my own—ask this Court to grant rehearing in this case. When both sides want to undo the original opinion, perhaps that says something.

Nevertheless, I join the Court's decision to deny rehearing. Despite my misgivings about the Court's holding and its analysis, neither party in this case has pointed to any arguments that were not considered by the Court or new law that could not have been considered on original submission. This should be the guiding principle for granting rehearing. And that is why I vote to deny.

With these thoughts I concur.

S.W.2d 791, 794 (Tex. Crim. App. 1991) ("This Court and the Court of Appeals are without authority to render advisory opinions."). Assuming we should address it, there are also significant problems with the Court's analysis, which borrows retroactivity jurisprudence for "court-made" rules and applies it to a holding striking down a duly-passed statute as facially unconstitutional. *See Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (considering retroactivity of court-made rule announced in *Batson v. Kentucky*); *Stovall v. Denno*, 388 U.S. 293, 296–97, 87 S.Ct. 1967, 18 L.Ed.2d 1199 1967 (considering retroactivity of court-made rule regarding admissibility of tainted eyewitness identification testimony). The Court fails to account for our jurisprudence holding a statute *void ab initio* when it has been declared facially unconstitutional. *Smith v. State*, 463 S.W.3d 890, 895 (Tex. Crim. App. 2015); *Reyes v. State*, 753 S.W.2d 382, 383 (Tex. Crim. App. 1988); *Ex parte Bockhorn*, 62 Tex. Crim. App. 651, 62 Tex.Crim. 651, 138 S.W. 706, 707 (1911). Declaring a statute facially unconstitutional is not finding constitutional

court error or announcing a new court-made rule of criminal procedure; it is holding that the legislature passed a statute so blatantly unconstitutional it should have never been passed. *Reyes*, 753 S.W.2d at 384 (holding that the determination that Article 32A.02 was void due to a violation of the separation of powers rendered the statute void from inception). If we are going to address "retroactivity" at all, *Reyes v. State* would seem to control. At the very least, I would not decide the issue without first ordering the parties to brief it, assuming it is even appropriate to address it in this case at all. *Cf. Teague v. Lane*, 489 U.S. 288, 300, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (deciding the issue of retroactivity of a court-made rule of criminal procedure at time the new rule was announced where retroactivity was raised in an amicus brief and addressed in reference to a related claim by the parties).

1. *Salinas v. State*, 523 S.W.3d 103, 117–18, 2017 WL 915525, at *10 (Tex. Crim. App. Mar. 8, 2017) (Newell, J., dissenting).